UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| ROSEMARY HARLIN, | ) |
| Plaintiff, | ) Case. No. 09 C 3099 |
| v. | ) Magistrate Judge |
| MICHAEL J. ASTRUE, | ) Arlander Keys |
| Commissioner of Social | ) |
| Security | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosemary Harlin moves this court for Summary Judgment, pursuant to *Rule 56(a) of the Federal Rules of Civil Procedure.* She seeks an order reversing the decision of the Commissioner of Social Security ("Commissioner"), who denied her claim for Supplemental Security Income Benefits ("SSI"). In the alternative, Ms. Harlin seeks an order remanding the case to the Commissioner for further proceedings. The Commissioner has filed a cross-motion for summary judgment. For the reasons set forth below, the Court grants the Commissioner's motion for Summary Judgment, and denies the Plaintiff's motion for summary judgment.

## PROCEDURAL HISTORY

Rosemary Harlin initially applied for SSI on October 4, 2004, alleging that she became disabled on October 1, 2002. R. at 123 - 124. The Social Security Administration (SSA) denied her application initially on January 27, 2005 and again upon reconsideration on April 20, 2005. R. at 67-71, 73-76. Ms.

Harlin filed a timely written request for a hearing before an Administrative Law Judge ("ALJ") on May 4, 2005. R. at 77. After several unsuccessful attempts, SSA staff was finally able to contact Ms. Harlin to schedule a hearing for February 12, 2007. On that date, Ms. Harlin appeared before ALJ Michael G. Logan without Counsel. R. at 551. ALJ Logan explained to Ms. Harlin that she had the right to representation; he also explained the potential benefits of having counsel. R. at 551 - 554. ALJ Logan advised that he would continue the case if Ms. Harlin wanted to obtain counsel; Ms. Harlin stated that she would like to be represented in the proceeding. R. at 554 - 55. The hearing was rescheduled and held on May 4, 2007. R. at 31.

On November 30, 2007 ALJ Logan issued a decision denying Ms. Harlin Supplemental Security Income, finding that she was not disabled within the meaning of the Social Security Act and that her substance use disorder was a contributing factor material to the determination of disability. R. at 12, 30. The ALJ found that there were jobs in the national economy that Ms. Harlin could do, such as that of an office cleaner or an assembly line worker. R. at 29. Ms. Harlin filed a request for review of ALJ Logan's decision with the Appeals Council on January 4, 2008. R. at 10 - 11. On April 15, 2009, the Appeals Council denied Ms. Harlin's request for review, making ALJ Logan's decision the final administrative determination of the Commissioner. R. at 4.

Ms. Harlin filed this lawsuit on May 22, 2009, seeking judicial review of the final decision of the Commissioner. Compl. ¶ 1. The case was assigned to this Court after the parties consented to proceed before a United States Magistrate Judge. Thereafter, both parties moved for summary judgment. Ms. Harlin asks this Court to reverse the decision of the Commissioner and to award benefits or in the alternative to remand the case for further proceedings. The Commissioner has filed a cross-motion for summary judgment, seeking affirmance of the Commissioner's decision.

## **FACTUAL HISTORY**

### A. Testimony at the Hearing

At the hearing on May 4, 2007, ALJ Logan heard from Ms. Harlin; medical expert Dr. Ellen Rozenfeld; and vocational expert Thomas Dunleavy. Ms. Harlin testified that she is unable to work due to a lack of focus and an inability to remember things, which causes her to experience depression and anxiety attacks. Record at 569, 577 - 78. She defined her "lack of focus" as "having no interest or desire to do anything," and she testified that her depression was marked by not going outside for days, not taking baths, and gaining weight. R. at 576. She testified that, when she feels overwhelmed, she has anxiety attacks, which cause her to lose her breath; she testified that she has experienced seizures, including one in which she fell and chipped her teeth,

but she testified that she cannot really remember the details of past seizures.  R. at 572, 577, 579.

Ms. Harlin testified that she graduated from Orr High School, and then attended Western Illinois University for one year.  R. at 566, 570.  She testified that, after leaving Western Illinois, she worked odd jobs, with the longest period of employment lasting, at most, two years.  R. at 572.  She testified that she has not had any relevant work experience for the past fifteen years and cannot remember if she has ever been fired. R. at 572.

Ms. Harlin testified that she started using illegal drugs in her twenties to deal with depression, and that she turns to illegal drugs whenever she is depressed.  R. at 573.  She stated that she abstained from illegal drug use over a three year period while in a pre-hospitalization program, but that, even then, she continued to have problems focusing. R. at 573 - 74. She testified that she has not had a period of abstinence from illegal drugs since that three year period.  R. at 573.  She could not remember why she did not work during the period of time in which she abstained from drugs.  R. at 588.

Ms. Harlin testified that her mood is constantly changing between feelings of empowerment to lacking confidence. R. at 575. She testified that she has tried to cut herself five times, that she has been hospitalized after overdosing on pills, and that she

is on medication for depression and high blood pressure. R. at 563, 581, 583. Her physical ailments include tendonitis, pancreatitis, and headaches, and she takes hormone treatments because she had a full hysterectomy. R. at 582.

Ms. Harlin testified that, on a typical day, she sleeps until about 1:00 p.m. because she has nothing to do. R. at 584. She testified that she showers daily, prepares her own food, cleans her house, and does her own grocery shopping. R. at 584 – 85. She testified that she does not go out socially or have any close friends, and she admitted feeling insecure because of her weight gain. R. at 587. She testified that she maintains communication with members of her family, including her sisters, mother and son, as well as with her roommate and her psychiatrist. R. at 586 – 87.

Ms. Harlin cried throughout most of her testimony, and it was observed by the ALJ that she moved a lot while testifying. R. at 578. When asked about it, she attributed her behavior during the hearing to bipolar disorder. R. at 578.

After Ms. Harlin, the ALJ heard from Dr. Ellen Rozenfeld, a medical expert (ME). Dr. Rozenfeld testified that, from Ms. Harlin's records, she could identify medically determinable impairments, including recurrent major depressive disorder and mixed type bipolar disorder, but that she could not distinguish from the records which disorder was dominant. Record at 588.

Dr. Rozenfeld testified that she established from the records that Ms. Harlin has an affective disorder and that she also abuses cocaine. R. 588 - 89. Dr. Rozenfeld noted that there are conflicts with Ms. Harlin's stated period of abstinence and her medical records. R. at 589. The ME testified that Ms. Harlin's medical record indicated longstanding problems with depression, suicidal ideation, preoccupation, ruminations, low self esteem and feelings of inadequacy; but she also noted that, when hospitalized, Ms. Harlin responded to both treatment and medication. R. at 590. The ME testified that she could not make a determination based on the medical records as to whether Ms. Harlin's emotional problems were independent from her substance abuse, noting that there were no records in her file which showed long term treatment for emotional problems and that the treatment was always paired with an instance of substance abuse. R. at 590.

The ME testified that, in her view, Ms. Harlin's conduct at the hearing suggested that she would have difficulty with any kind of sustained concentration. R. at 591. She stated that Ms. Harlin clearly has moderate limitations in terms of her daily activities and possibly even marked limitations with regard to social functioning. R. at 597. She testified that Ms. Harlin's medical records contained varied comments on her mental status, with some records indicating that she has good long-term memory,

is alert, and cooperative, and other records noting a reduction in concentration and memory. R. at 598. The ME indicated that she could not make a finding as to whether or not Ms. Harlin's disruption in functioning is independent of her substance abuse. R. at 591. Similarly, with regard to Ms. Harlin's recent seizures, the ME testified that she could not definitively conclude that they would have occurred independent of substance abuse. R. at 599.

Next the ALJ heard from Thomas Dunleavy, a vocational expert (VE). ALJ Logan asked the VE if there were available positions in the national economy for someone of Ms. Harlin's demographic (age, education, lifting capacity) who could maintain her concentration, persistence, and pace for 87 percent of the workday. R. at 602. The VE identified the jobs of office cleaners and assemblers and provided the statistics for those positions in the metropolitan Chicago area. R. at 602 – 3. ALJ Logan then asked the same question for someone of Ms. Harlin's demographic, who might have one or more decompensations[1] in which the person may miss more than two weeks of work. R. at 603. The VE responded that there would be a high risk of that person being terminated and that those decompensations may preclude

[1] By "decompensaton" the ALJ appears to refer to the functional deterioration of a previously working structure or system and may occur due to fatigue, stress, illness, or old age. When a system is "compensated," it is able to function despite stressors or defects. Decompensation describes an inability to compensate for these deficiencies. It is a general term commonly used in medicine to describe a variety of situations. See www.wikipieda.com.

employment. R. at 603. The VE testified that, to retain a position in an unskilled competitive job, an employee would generally need to be on pace for 85% of the workday; this means, he testified, that an employee may not be off task for longer than six or seven minutes per hour. R. at 604.

## B. Medical Evidence

In addition to the live testimony, the ALJ also considered the medical evidence on record. The evidence showed that, in July of 1993, Ms. Harlin was hospitalized at the age of 29 for a suicide attempt. Record at 203, 228. Past suicide attempts were reported in 1985 (age 21) and 1981 (age 17) in Chicago. R. at 206, 214. Her latest hospital visit for a suicide attempt was in 2000, when she resided in Atlanta, Georgia. R. at 274.

The record shows that, in October 2004, Ms. Harlin started to receive care at Advocate Bethany Hospital and saw both a psychiatrist (Dr. Bharathi Marri) and a primary care physician (Dr. Alikhan). R. at 152. Dr. Marri's initial evaluation, which is undated, reported no cocaine use since 2004 and described Ms. Harlin's history of depression and past non-compliance with prescribed medication. R. at 288 - 89.

In January 2005, Dr. Kenneth Levitan, a psychiatrist, examined Ms. Harlin on behalf of the state agency. R. at 265. He diagnosed chronic depression and drug use and opined that she would have difficulty handling regular work pressure and stress,

8

but she could nevertheless perform simple routine tasks, communicate with co-workers and a supervisor, and follow, understand and retain most instructions. R. at 266. Following this examination, Dr. Galasi-Hudspeth reviewed the record on behalf of the state agency and opined that Ms. Harlin had only moderate limitations from her mental impairments and drug abuse. R. at 267 - 68, 281. Dr. Galasi-Hudspeth noted that Ms. Harlin should not be required to deal with the public, but could perform simple and routine tasks in a work setting and communicate with co-workers and supervisors. R. at 269 - 70.

The record shows that, during February and March of 2005, Ms. Harlin's psychiatric treatment with Dr. Marri continued. R. at 288. During that timeframe, Dr. Marri assessed Ms. Harlin with a GAF[2] score of 60-70, indicating that Ms. Harlin was experiencing "some mild symptoms" or having "some difficulty in social, occupational or school functioning" "but generally functioning pretty well." Dr. Marri's treatment notes indicated, however, that Ms. Harlin's prognosis was "fair to poor" because of her stressors[3] and her cocaine addiction. R. at 289.

---

[2] A Global Assessment of Functioning (GAF) score measures a clinician's judgment of the individual's overall level of psychological, social, and occupational functioning. *See* Diagnostic & Statistical Manual of Mental Disorders-Text Revision 32 (4th ed. 2000). The higher the score, the less severe the symptoms and the individual will have a higher level of functioning.

[3] A stressor is defined as an agent, condition, or other stimulus that causes stress to an organism. Found at www.Answers.Com ,

In April 2005, Dr. Donald Henson reviewed the record, including Dr. Marri's notes, and affirmed the opinion of Dr. Galasi-Hudspeth. R. at 66, 76.

The record shows that, from August 5-8, 2005, Ms. Harlin was hospitalized at the behavioral unit of Advocate Bethany Hospital for Major Depressive Affective Disorder. R. at 291. In September 2005, Ms Harlin had surgery and reported her history with depression, but denied any history of alcohol or illegal drug abuse. R. at 306.

In December 2005, Ms. Harlin went to the hospital after using cocaine, with complaints of intense depression, suicidal ideation and anxiety. R. at 293. Upon admission, she was assessed and given a GAF score of 30, indicating that her behavior was "considerably influenced by delusions or hallucinations" or that she had "serious impairment in communication or judgment" or "a inability to function in almost all areas." DSM-IV, p. 32. Ms. Harlin was then admitted into the partial hospitalization and intensive outpatient program. R. at 292, 294.

The record shows that Ms Harlin returned to the hospital in January 2006, seeking treatment for an infection; at that time, she tested negative for illegal drug use. R. at 384. However, two weeks later, after using crack cocaine, Ms. Harlin returned

---

http://www.answers.com/topic/stressor (last visited July 12, 2010).

to the hospital complaining of depression and suicidal ideation. R. at 376. After seven days of being hospitalized, Ms. Harlin's GAF score returned to the 60-70 range. Ms. Harlin indicated that she would continue treatment and maintain sobriety. R. at 362-363. It appears that she was unable to honor that pledge.

The record shows that, in March 2006, Ms. Harlin was hospitalized more than once following cocaine use. With the first hospitalization, an EEG and CT scan were conducted to assess possible seizure disorder. Both tests produced normal results, but may have been inconclusive, as Ms. Harlin checked herself out of the hospital and left against medical advice. R. at 339, 342 - 43. With the second hospitalization, the attending physician again considered whether Ms. Harlin had a seizure disorder, "malingering," or cocaine induced symptoms. R. at 345, 355. Her CT scan was negative, and again, she left the hospital against the medical advice of her doctors. R. at 355, 359.

The record shows that, in February 2007, Dr. Marri noted during an office visit that Ms. Harlan, was not compliant with her prescribed treatment (she had missed appointments and was not taking her medications); the treatment notes indicate that, on medication, Ms. Harlin could be stable. R. at 391, 392. In March 2007, Ms. Harlin was admitted to the hospital complaining of chest pain and discomfort. R. at 403. Her chest x-rays were

normal, however she tested positive for cocaine and heroin. R. at 417, 418.

In April 2007, a month prior to the hearing before the ALJ, Dr. Marri completed a form indicating that Ms. Harlin had a "disability" apart from drug abuse and opined that Ms. Harlin's drug use was caused by her depression and stressors; her treatment notes indicate that Ms. Harlin had a bi-polar mixed type disorder, with major depression and cocaine dependence. R. at 314.

In June 2007, Ms. Harlin was hospitalized for bipolar disorder, cocaine dependence, a history of heroin dependence in partial remission and dysthemia; upon admission, she was again assessed with a GAF score of 30. R. at 18. Ms. Harlin was hospitalized for six days, and, upon her release, she was assessed with a GAF score of 70-75, indicating that, if present, her symptoms were transient, and that she had no more than slight impairment in social, occupational or school functioning. R. at 26.

## C.  Decision of the Administrative Law Judge

The ALJ issued his decision on November 30, 2007, finding that Ms. Harlin had not engaged in substantial gainful activity since October 4, 2004; that she has severe impairments, including cocaine abuse, depression, and seizure disorder; and that her impairments, including the substance abuse disorder, meet those

listed in the regulations.  Record at 17 - 18.  The ALJ further found that, if Ms. Harlin stopped the substance abuse, the remaining limitations would cause more than a minimal impact on her ability to perform basic work activities.  The ALJ also found that, if Ms. Harlin stopped using drugs, her impairments would not meet or equal any listed impairment.  R. at 19.

In assessing Ms. Harlin's residual functional capacity, the ALJ found that, if Ms. Harlin stopped the substance abuse, she would be able to lift or carry up to 20 pounds occasionally and 10 pounds frequently and to sit and stand/walk frequently.  R. at 20.  Additionally, the ALJ found that Ms. Harlin would be able to maintain concentration, persistence and pace 87% of the workday. He also found that she demonstrated moderate limitation in activities of daily living and social interaction, which reflected a need for minimal supervision and minimal contact with coworkers.  R. at 20.

The ALJ concluded that Ms. Harlin would not be disabled if she stopped using drugs and that her substance abuse disorder was a contributing factor material to the determination of disability.  R. at 20.  The ALJ, therefore, concluded that Ms. Harlin was not disabled within the meaning of the Social Security Act, and he denied her claim for benefits.  R. at 20.

In these proceedings, she argues that the ALJ's decision to deny benefits is unsupported by substantial evidence and is

contrary to the law. In particular, Ms. Harlin argues that the ALJ erred in finding that her substance abuse was a material factor in the determination of disability; that the ALJ improperly rejected the medical opinions of her treating physicians; and that the ALJ improperly evaluated post-hearing evidence.

## STANDARD OF REVIEW

A district court reviewing an ALJ's decision must affirm if the decision is supported by substantial evidence and is free from legal error. 42. U.S.C. §405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a scintilla"; rather it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing an ALJ's decision for substantial evidence, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations." *Skinner v. Astrue*, 478 F. 3d 836, 841 (7th Cir. 2007) (citing *Jens v. Barnhart*, 347 F. 3d 209, 212 (7th Cir. 2003)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commission, not the courts. *Herr v. Sullivan*, 912 F. 2d 178, 181 (7th Cir. 1990). An ALJ must articulate his analysis by building an accurate and logical bridge from the evidence to his conclusions, so that the

Court may afford the claimant meaningful review of the SSA's ultimate findings. *Steele*, 290 F. 3d at 941. It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for that decision or if the decision is not sufficiently articulated, so as to prevent meaningful review, the Court must remand. *Id*.

## SOCIAL SECURITY REGULATIONS

An individual seeking SSI must prove that he or she has a disability, specifically "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 432(d)(1)(A).

In determining whether an individual is disabled, the SSA has established a five step sequential evaluation process. 20 C.F.R. §404.1520(a)(4). First, the ALJ must determine if the individual is currently employed; second, a determination must be made as to whether the individual has a severe impairment; third, the ALJ must determine if the impairment meets or equals one of the impairments listed by the Commission in 20 C.F.R. Part 404, Subpart P, Appendix 1; fourth, the ALJ must determine the individual's Residual Functional Capacity[4], and must evaluate

---

[4] The Residual Functional Capacity assessment determines the most work a claimant can do, despite her physical or mental impairments. 20 C.F.R. §

whether the individual can perform his or her past relevant work; and, fifth, the ALJ must decide whether the individual is capable of performing other work in the national economy. *Knight v. Charter*, 55 F.3d 309, 313 (7th Cir. 1995). At steps one through four, the claimant bears the burden of proof; at step five, the burden shifts to the Commissioner. *Id.*

## DISCUSSION

After conducting the required five-step analysis, the ALJ found that Ms. Harlin had not engaged in any substantial gainful work. At step two, the ALJ found that Ms. Harlin had three severe medically determinable impairments: cocaine abuse, depression, and seizure disorder, all of which, the ALJ noted, would significantly limit Ms. Harlin's ability to perform work-related activities. At step three, the ALJ found that Ms. Harlin's mental impairments, including the substance abuse disorder, met those listed by the Commissioner, and that absent the substance abuse, the remaining impairments would cause more than a minimal impact on Ms. Harlin's ability to perform basic activities; however, the ALJ determined that, absent the substance abuse disorder, Ms. Harlin would not have a severe impairment or combination of impairments that meets or medically equals any of the impairments listed by the Commissioner. At

416.945.

.

step four, the ALJ found that Ms. Harlin had moderate limitations, with the residual functional capacity to maintain concentration, persistence and pace 87% of the workday and that she had the capacity to lift/carry 20 pounds occasionally, to lift/carry 10 pounds frequently, and to sit and stand/walk frequently. The ALJ recognized that Ms. Harlin's moderate limitations in social interaction and daily living, revealed that she needed minimal supervision and that she could handle minimal contact with co-workers. At step five, the ALJ concluded that there were jobs within the Chicago metropolitan area that Ms. Harlin could perform, including that of office cleaner, assembler, and packager.

Ms. Harlin argues that the ALJ's decision was erroneous for three reasons: that the ALJ erred in finding that her substance abuse was a material factor in the determination of disability; that the ALJ improperly rejected the medical opinions of her treating physicians; and that the ALJ improperly evaluated the post-hearing evidence.

## I. The ALJ's finding that Ms. Harlin was not disabled because her substance abuse disorder was material to the determination of disability is supported by substantial evidence.

Ms. Harlin contends that the ALJ erred when he determined that her substance abuse was a material factor in the determination of her disability. A finding that the substance

abuse is material is only appropriate when it is impossible to separate the mental impairment from the substance abuse. 42 U.S.C. § 423(d). If an applicant for Supplemental Security Insurance is found to be disabled and there is medical evidence of a substance abuse disorder, a determination must be made concerning whether or not the substance abuse disorder is a contributing factor material to the determination of disability. 20 C.F.R. § 404.1535(a). The key factor is determining whether the individual would be found disabled if she stopped the substance abuse. 20 C.F.R. § 416.935(b)(1). If the individual's limitations, absent substance abuse, preclude a determination of disability, then the substance abuse is "material" to the disability determination, and the applicant will be denied benefits. 20 C.F.R. § 416.935(b)(2)(I).

In Ms. Harlin's case, the ALJ made an initial determination that she was disabled. However, because of the evidence showing that Ms. Harlin was a substance abuser, the ALJ had to determine whether, absent the substance abuse, Ms. Harlin's impairments would permit a finding of disability. *See* 20 C.F.R. § 404.1535(b)(1); *Kangail v. Barnhart* 454 F.3d 627, 628 (7th Cir. 2006)(When an applicant for disability benefits both has a potentially disabling illness and is a substance abuser, the issue for the administrative law judge is whether, were the applicant not a substance abuser would she still be disabled.).

To this end, the ALJ reviewed Ms Harlin's medical records covering the period between October 2004 and January 2007; for the most part, the records show that Ms. Harlin regularly used drugs. The majority of her hospitalization records reveal evidence of drug use upon admission. In December 2005, after using cocaine, Ms. Harlin was admitted to the hospital with complaints of suicide, depression and anxiety. She was placed in a partial hospitalization/partial outpatient rehabilitation program, but was admitted to the hospital again in January 2006 after using crack cocaine; at that time, she again complained of depression and suicide. She remained in the hospital for one week, and, thereafter, showed a markedly improved GAF score (she jumped from a 30 at admission to a 60-70). During March 2006, Ms. Harlin was hospitalized twice and, both times, she left the hospital against the advice of her doctors – but not before admitting that she used cocaine every day.

Based upon this evidence, the ALJ determined that, when she abstained from using drugs, Ms. Harlin's level of functioning improved dramatically – from a point where she was experiencing delusions and hallucinations to a point where she could manage meaningful interpersonal relationships. The ALJ found that, when Ms. Harlin was receptive to treatment for substance abuse – when she fully participated in rehabilitation programs and took her

medications as prescribed, she experienced a normal level of functioning.

Although there is some evidence that Ms. Harlin suffers from a seizure disorder and depression, the ALJ found that these impairments were related to Ms. Harlin's use of illegal drugs. Accordingly, the ALJ concluded, Ms. Harlin's substance abuse was a contributing factor material to the determination of disability.

Ms. Harlin does not dispute that the ALJ accurately summarized the facts spelled out in her medical records, only that the ALJ erred in finding her substance abuse material in her disability determination. In so arguing, Ms. Harlin summarizes the law as it was prior to 1986, when the materiality of substance abuse was not subject to the same stringent requirements when seeking a disability determination for benefits. R. at 540 - 541. While her summary is generally accurate, it is also largely irrelevant. It is the current law that controls, and, under present law, as the ALJ explained, a substance abuse disorder, by itself, is no longer an impairment for which disability benefits may be awarded. Although a substance abuser is not necessarily precluded from receiving benefits, the substance abuse cannot be material, that is, the substance abuse cannot be the cause of the disability.

Here, the ALJ reviewed Ms. Harlin's medical record and concluded that she did have severe mental impairments, including the substance abuse, but that, absent the substance abuse, she was able to function well. The ALJ concluded, based upon the evidence, that Ms. Harlin's substance abuse was material to the disability determination. On this issue, the ALJ's analysis supports his conclusions and his explanation is sufficient to afford meaningful review, to allow this Court to follow the ALJ's "path of reasoning." *See Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995). Because his findings are supported by substantial evidence, the Court will not second guess them.

**II.    The ALJ accorded the proper weight to the opinions of Ms. Harlin's treating physicians in determining that substance abuse was material.**

Ms. Harlin next argues that the ALJ should have afforded greater weight to the medical opinions of her treating physicians. If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he is required to consider the following factors in determining the weight to be given to the opinion: the length of treatment relationship and frequency of examination; the nature and extent of the treatment relationship; supportability; the consistency with the record as a whole; and any specialization. 20 C.F.R. § 416.927(d)(2)-(6). Individuals applying for disability benefits have an incentive to "exaggerate their symptoms" and a treating physician may be

biased to help a patient. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). Thus, an individual is not entitled to benefits merely because her treating physician said that she is disabled or unable to work. *Dixon v. Massanari,* 270 F.3d 1171, 1177 (7th Cir. 2001). Nor is an ALJ required to accept medical evidence if it is refuted by other evidence. *Rogers v. Barnhart*, 446 F.Supp.2d 828, 853 (N.D. Ill. 2006)(quoting *Wilder v. Chater,* 64 F.3d 335, 337 (7th Cir. 1995). Rather, if conflicting medical evidence is presented, the ALJ must resolve the conflict. *Diaz,* 55 F.3d at 306.

In March 2007, Dr. Alikahn, Ms. Harlin's primary care physician, diagnosed her with hypertension and noted that her prognosis was fair. The ALJ found that, over the course of a three year treatment, Dr. Alikahn identified depression and anxiety as impairments that prevented Ms. Harlin from being able to focus or work; yet Dr. Alikahn made no mention of her substance abuse disorder or her consistent failure to comply with prescribed medications. This glaring omission belies the medical evidence regarding Ms. Harlin's hospitalizations, as well as Ms. Harlin's own testimony. In March 2006, Ms. Harlin admitted to using cocaine on a daily basis, and at the hearing, she testified that she had not had a recent period of abstinence. Her most recent hospitalization was June 2007, where she was admitted for cocaine dependency and a history of heroin dependence.

Additionally, the ALJ found it peculiar that Dr. Alikahn treated Ms. Harlin for three years, but never acknowledged her substance abuse as an impairment. The ALJ also noted that, although Dr. Alikahn was a primary care physician, his prognosis centered more on Ms. Harlin's mental status than on her physical ailments. Because of these issues, the ALJ gave less weight to Dr. Alikahn's opinions; the Court will not second guess that decision.

The ALJ also discounted somewhat, Dr. Marri's assessments of Ms. Harlin. Dr. Marri treated Ms. Harlin over the course of two years. In 2005, Dr. Marri noted that Ms. Harlin was capable of being stable on medication, but that when she was non-compliant with her medications, she demonstrated significant symptoms. One month before the hearing in April 2007, Dr. Marri indicated that Ms. Harlin had a disability apart from substance abuse. Between these treatments, Ms. Harlin had been hospitalized on at least three occasions in which substance abuse was evident. Additionally, the ALJ found that Dr. Marri had been taking Ms. Harlin at her word when she reported using drugs only intermittently; her records tell the story of a frequent substance abuser who chose illegal drugs over her prescribed medications. The ALJ also noted that, while Dr. Marri diagnosed Ms. Harlin with bi-polar disorder and depression, her own treatment notes indicated that, when Ms. Harlin took her

prescribed medications and followed prescribed treatment programs, she was alert, cooperative and free from hallucinations and paranoia.

In short, based on the record as a whole, the ALJ's decision to give less that controlling weight to Ms. Harlin's treating physicians was proper.

### III. The ALJ properly analyzed the evidence submitted post hearing regarding Ms. Harlin's medical treatment.

Ms. Harlin next argues that the ALJ did not consult the ME on medical records submitted post hearing. When determining whether a plaintiff is disabled, the Commissioner may consider opinions from medical sources, but the final responsibility for deciding the issue is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)(2); *see also Boyd v. Astrue,* No. 09 C 1217, 2009 WL 5149136, at *10 (N.D. Ill. Dec. 28, 2009). The ALJ is only required to re-contact medical sources when the evidence received is inadequate to determine whether the claimant is disabled. *Boyd,* 2009 WL 5149136, at *11 (citing *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004))(holding the ALJ articulated a proper assessment of post-hearing evidence).

In Ms. Harlin's case, the additional records submitted post hearing, were those of Ms. Harlin's treating psychiatrist Dr. Marri; these were records the ALJ requested after he noted that the only medical records in evidence were from Ms. Harlin's

treating primary care physician, despite her testimony that she had received psychiatric care for at least two years. R. at 594.

After reviewing the additional medical records, the ALJ noted that, over several months of treatment, Dr. Marri found Ms. Harlin was not compliant with her prescribed medications, that she continued to abuse illegal substances, and that she was capable of being stable on medications despite her depression. This was all consistent with the ME's testimony. The ME noted that Ms. Harlin's hospitalized treatments for depression, suicidal ideation, and seizures were related to the use of illegal drugs. The ME also pointed out that Ms. Harlin's medical records showed that she responded well when she was abstinent from illegal drugs and taking her medications as prescribed. Because this testimony and evidence was consistent, it was not necessary for the ALJ to resubmit the post hearing evidence to the ME for additional review. The additional evidence did not undermine the ALJ's finding that Ms. Harlin's substance abuse was material to a determination of disability; on the contrary, it supported this determination. Dr. Marri's additional notes, and the records submitted pre-hearing showed that Ms. Harlin's substance disorder was what prevented her from being able to focus, maintain meaningful relationships and be a productive member of society. Because the post-hearing evidence was

consistent with the pre-hearing evidence, it was not necessary for the ALJ to resubmit the additional evidence to the ME.

## CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's findings at step five are supported by substantial evidence, and that the ALJ built an accurate and logical bridge between the record evidence and his conclusions – particularly the finding that Ms. Harlin's substance abuse was a material factor contributing to her mental impairments, and the findings that, if Ms. Harlin abstained from using illegal drug and took her medications as prescribed, she would be capable of performing other jobs in the national economy. The Court, therefore, grants the Commissioner's Motion for Summary Judgment [#21], and denies Ms. Harlin's Motion for Summary Judgment [#20]. The decision of the Commissioner is affirmed.


Dated: August 4, 2010

                              E N T E R:


                              ARLANDER KEYS
                              United States Magistrate Judge